AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of Massachusetts

| | |
|---|---|
| United States of America<br>v.<br>ISMAEL JIMENEZ<br><br>_Defendant(s)_ | Case No.<br>19-mj-7211-JCB |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __June 13, 2019__ in the county of __Essex__ in the _____ District of __Massachusetts__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm |

This criminal complaint is based on these facts:

See the Affidavit of Matthew J. McCarthy and all attachments attached hereto and incorporated herein for all purposes.

☐ Continued on the attached sheet.

_Complainant's signature_

Mattew J. McCarthy, Special Agent, HSI
_Printed name and title_

Sworn to before me and signed in my presence.

Date: __June 14, 2019__

_Judge's signature_

City and state: __Boston, Massachusetts__  Hon. Jennifer C. Boal, U.S. Magistrate Judge
_Printed name and title_

I, Matthew J. McCarthy, being duly sworn, depose and state as follows:

## INTRODUCTION

1. I am a Special Agent ("SA") of the United States Department of Homeland Security, Homeland Security Investigations ("HSI"), currently assigned to the Office of the Special Agent in Charge, Boston, Massachusetts, and have been employed in that capacity for over 15 years. From 2004 to December 2010, I was assigned to the Document and Benefit Fraud Task Force. From December 2010 until November 2014, I was assigned to the Organized Crime Drug Enforcement Task Force. Since November 2014, I have been assigned to the Counter-Proliferation Investigations Group. During my career, I have been the affiant on numerous affidavits in support of both search warrants and criminal complaints in the District of Massachusetts. I have received specialized training on how to conduct investigations involving violations of federal law, including but not limited to smuggling, the illegal exportation of weapons, technology, and other controlled commodities, and the federal criminal statutes that regulate and, in certain instances, prohibit the import and export of certain merchandise into the United States. I am responsible for investigating and enforcing violations of the Arms Export Control Act, 22 U.S.C. § 2778, as well as the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701 et seq., and relevant regulations. I am also responsible for investigating smuggling violations, including violations of 18 U.S.C. §§ 554, 545 et seq. I have participated in several investigations of violations of United States' laws related to smuggling of goods to and from the United States. My investigations have included the use of surveillance techniques and the execution of search, seizure, and arrest warrants.

2.      This affidavit is submitted in support of an application for a criminal complaint charging Ismael **JIMENEZ**, DOB 03/04/1991, SSN 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 (hereinafter "**JIMENEZ**"), with being a felon in possession of one or more firearms, in violation of 18 U.S.C. § 922(g)(1).

3.      This affidavit is also submitted in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for information about the location of the mobile phone assigned 978-601-1117 (the "Target Mobile Phone"), the subscriber to which is Ismael **JIMENEZ**, 21 Nesmith Street, Lawrence, MA, and that is believed to belong to **JIMENEZ**. The service provider for this phone is T-Mobile US, Inc. ("T-Mobile") a wireless telephone service provider that accepts service of process at 4 Sylvan Way, Parsippany, NJ 07054. The Target Mobile Phone is further described in Attachment A, and the location information to be seized is further described in Attachment B.

4.      This affidavit is submitted for the limited purpose of establishing probable cause to believe that **JIMEMEZ** violated 18 U.S.C. § 922(g)(1) and that the location information described in Attachment B will assist law enforcement in arresting **JIMENEZ**, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4). I have not included each and every fact known to me concerning this investigation. The statements in this affidavit are based in part on my personal participation in this investigation, my training and experience, and information provided to me by other law enforcement officers.

### FACTS ESTABLISHING PROBABLE CAUSE

5.      According to the records of the Massachusetts Board of Probation, **JIMENEZ** has a criminal record that includes convictions for crimes of violence and firearm offenses. On or about February 2, 2010, **JIMENEZ** was convicted in Essex Superior Court of Armed Assault with Intent to Murder, Assault and Battery by means of a Dangerous Weapon, Possession of

2

Ammunition, and Carrying a Dangerous Weapon without a License. As a result of these convictions, **JIMENEZ** was sentenced to 9 ½ to 10 years' incarceration and placed on probation for a consecutive term of ten years. In 2016, apparently while out on probation, **JIMENEZ** was convicted in Clinton District Court of Assault and Battery by means of a Dangerous Weapon and sentenced to 60 days in the House of Correction. **JIMENEZ** also has a juvenile criminal record which includes adjudications as a youthful offender for Armed Assault with intent to Rob (Knife) and Assault and Battery by means of a Dangerous Weapon (Knife), for which **JIMENEZ** received sentences of 2 to 3 years' committed in Cedar Junction. As a convicted felon, **JIMENEZ** is prohibited from possessing firearms or ammunition. A firearms registration check for **JIMENEZ** returned negative results.

6. On June 3, 2019, Department of Homeland Security ("DHS") databases revealed that an incoming shipment from China, being manifested or declared as a "Glock Switch," was being shipped from LUO YUE, 5HUALINDA ECOMMERCE BUILDING, CHANGJIANGP U ROAD HENGGANG STREET LONGGANG DISTRICT SHENZHEN, China, 518029 to Ismael **JIMENEZ** at 21 Nesmith Street, Lawrence, MA, United States (the "**SUBJECT PREMISES**"). A contact number for the consignee, **JIMENEZ**, was listed as 978-429-5158.

7. According to the records of T-Mobile, cellular telephone number 978-429-5158 was subscribed to Ismael **JIMENEZ**, 21 Nesmith Street, Lawrence, MA, the same address as the Target Mobile Phone. Service for this phone was activated on March 3, 2019, but was deactivated on May 23, 2019.

8. According to the Massachusetts Department of Motor Vehicles and the Massachusetts Board of Probation, **JIMENEZ** resides at 21 Nesmith Street, Lawrence, MA.

3

Investigators conducting covert physical surveillance have also observed a white BMW registered to **JIMENEZ** parked outside 21 Nesmith Street at various dates and times.

9.  Based on my training, experience, and discussions with other federal agents, I am aware that Glock Ges.m.b.H., is a weapons manufacturer headquartered in Deutsch-Wagram, Austria (hereinafter "Glock"), which manufactures pistols.

10. Based on my training, experience, and discussions with other federal agents, I am also aware that auto switches or conversion devices have been designed and created for the sole purpose of converting semi-automatic Glock pistols into fully automatic machineguns and therefore meet the definition of "machinegun" under 26 U.S.C. § 5845(b). These devices vary by design and appearance but all, when properly installed on a semi-automatic Glock pistol, will allow the firearm to expel more than one projectile by a single pull of the trigger at a rate of approximately 1,200 rounds per minute. Installation of these conversion devices is fast and simple, requires no technical expertise, and is completed by removing the polymer slide cover plate on a Glock semi-automatic pistol and replacing it with a conversion device. I am aware that Glock does not manufacture auto switches. I also know that that the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") considers auto switches to be machineguns.

11. Based upon my training, experience, and discussions with other federal agents related to the investigation of international import-related and National Firearms Act ("NFA") violations, I know that apart from official military and law enforcement use, auto switches may only be lawfully possessed by Federal Firearms Licensees ("FFLs") who have paid the appropriate Special Occupational Tax required of those manufacturing, importing, or dealing in NFA weapons.

12. A records check with the ATF's FFL listing shows that **JIMENEZ** is not a licensed importer, licensed manufacturer, licensed dealer, or licensed collector of firearms. As a person previously convicted of violent felonies and firearms offenses, **JIMENEZ** is legally prohibited from possessing a firearm.

13. After learning that a shipment manifested as a "Glock switch" originating from China was addressed to **JIMENEZ** at 21 Nesmith Street in Lawrence, agents conducted a DHS query of international shipments destined for the **SUBJECT PREMISES** and learned of two additional shipments of significance:

   a. One package shipped to **JIMENEZ** at the **SUBJECT PREMISES** was manifested as a "Holster." This shipment originated from China with an expected arrival date into the United States of June 2, 2019. According to shipping records, the sender of the package was "WUYAYU, BANTIASHANGWUDASHA, SHENZHENSHI." The consignee for the gun holster was Ismael **JIMENEZ**, with the telephone number of 978-429-5158. According to U.S. Postal Service records, this package was scanned in at the Stamford, CT, processing plant on June 10, 2019, after entering the United States.

   b. Another package shipped to **JIMENEZ** at the **SUBJECT PREMISES** was manifested as a "Glock Stock". This shipment originated from China with an expected arrival date into the United States of June 1, 2019. The labeling of this package shows the shipper as: THKJ-023, 52POST.COM, Room 316, 3rd Floor, Building 4, HUANG YUE STREET, NUM 3213 BINHE ROAD, FUTIAN DISTRICT, SHENZHEN 518000. The consignee of this package was listed as ISMAEL **JIMENEZ**, 21 NESMITH ST. LAWRENCE MASSACHUSETTS 01841, UNITED STATES OF AMERICA with the telephone number of 978-429-5158. According to U.S. Postal Service records, this package was delivered to 21 Nesmith Street on June 8, 2019.

14. Based upon my training and experience, and my discussions with other investigators, I am aware of the following: "stocks" are added to specific handguns like Glocks, in particular those that are converted to "machine guns," in order to have more control over the weapon when rapidly firing, effectively turning a handgun into a shoulder/chest fired firearm; a holster is used to carry a firearm like a Glock on one's person for immediate access; and a person

5

who purchases a gun holster or a Glock stock is likely in possession of a firearm or involved in the sale or transfer of firearm parts.

15. On June 10, 2019, U.S. Customs and Border Protection ("CBP") at John Fitzgerald Kennedy International Airport, New York, NY, conducted a border search of the incoming package bearing United States Postal Service Tracking Number LN728780447CN, which is the tracking number associated with shipment manifested as "Glock Switch." JFK Airport was the first point of entry into the United States for this international shipment, which was sent from China. The label on this package shows the shipper was: THKJ-023, 52POST.COM, Room 316, 3rd Floor, Building 4, HUANG YUE STREET, NUM 3213 BINHE ROAD, FUTIAN DISTRICT, SHENZHEN 518000. The consignee of this package was listed as ISMAEL **JIMENEZ**, 21 NESMITH ST. LAWRENCE MASSACHUSETTS 01841, UNITED STATES OF AMERICA with a telephone number of 978-429-5158. Upon inspection, CBP determined that the package contained two Glock switches. The packaging and the Glock switches were seized by CBP and transferred to HSI. A photograph of the package and the two Glock switches is attached hereto as Exhibit 1.

16. On June 12, 2019, I applied for and received from the United States District Court in Boston, MA, a warrant authorizing the search of **JIMENEZ**'s residence at 21 Nesmith Street, Lawrence, MA, for evidence, fruits, and instrumentalities related to the crimes of importing or bringing into the United States contrary to law and in violation of 18 U.S.C. § 545, two "Glock switches," which are intended solely and exclusively for use in converting a weapon into a machinegun, and possessing one or more firearms in violation of 18 U.S.C. § 922(g)(1). The warrant authorized agents to search the **SUBJECT PREMISES** for and to seize, among other things, firearms, ammunition, and items pertaining to the possession, use, manufacture,

alteration, conversion, or modification of illegal firearms, as well as evidence and records from January 1, 2018 to the present, relating to the purchase, storage, disposition, or dominion and control over any firearms.

17. At approximately 1:30 p.m., on June 13, 2019, Inspector Brian Bukuras of the U.S. Postal Inspection Service posed as a letter carrier in order to deliver the package containing the Glock switches to **JIMENEZ**. Upon ringing the bell and knocking at the front door to 21 Nesmith Street, Inspector Bukuras was greeted by a woman. Bukuras stated that he was new to the postal route and had an international package addressed for **JIMENEZ.** This woman stated that was her son. Bukuras asked if **JIMENEZ** was home. The woman stated that yes that he was home. Bukuras responded that he needed **JIMENEZ**'s signature, because it was an international package, whereupon the woman stated that **JIMENEZ** was at work. The woman who identified herself as **JIMENEZ**'s mother then placed a call over her cellphone which was placed in speaker mode, allowing Bukuras to observe the name "Ismael **JIMENEZ**" appearing on the screen to the phone. After a brief conversation in Spanish with **JIMENEZ**, the woman had Bukuras speak to **JIMENEZ.** Bukuras stated that he had an international package to be delivered to Jimenez. **JIMENEZ** stated that he was expecting delivery of the package; that the package contained something for his car; and that he had international packages delivered to the residence in the past, but that he was not required to sign for any of them. Bukuras apologized, stating that he was new to the route. **JIMENEZ** then stated that he was 40 miles away at work and asked Bukuras to leave the package with his mother. **JIMENEZ**'s mother then accepted delivery of the package on **JIMENEZ**'s behalf.

18. Shortly after delivery of the package, HSI agents executed the search warrant and secured the scene. HSI agents, with the assistance of investigators from ATF and the U.S. Postal

Inspection Service, then conducted the search of the **SUBJECT PREMISES** pursuant to the terms of the warrant. During execution of the warrant, agents accessed the basement through a door off the rear hallway inside the **SUBJECT PREMISES**. The basement is only accessible to tenants of 21 Nesmith Street. In order to gain access to the stairs to the basement the occupants of 23 Nesmith would have to open a door to 21 Nesmith and enter that living space. It is not a shared stairwell. Agents next located a locked room within the basement where they proceeded to gain entrance. The room contained a bed, couch, dresser, television, and clothes that appeared to belong to a male.

19. During execution of the warrant, several people, including **JIMENEZ**'s mother, his father, his brother, and his brother's girlfriend, stated that **JIMENEZ** lived in a room in the basement of 21 Nesmith Street and that no one else lived there.

20. Inside the room located in the basement, agents observed a Glock pistol with a stock attached and a loaded high capacity magazine, a loaded KelTec pistol, and a bulletproof Kevlar vest. Also found during the search were various magazines for each pistol and numerous rounds of ammunition. Agents also found inside the room paperwork in **JIMENEZ**'s name, including the following: a T-Mobile bill with a balance due date of 06/25/19, addressed to "Ismael Jiminez, 21 Nesmith St, Lawrence, MA, 01841-4847," for telephone number 978-601-1117, which is the same number his mother used to call **JIMENEZ** with her cellphone and which also listed 978-429-5158 as **JIMENEZ**'s old telephone number; a medical discharge receipt from April 4, 2019, for **JIMENEZ**, which showed his telephone number at that time as 978-429-5158; the vehicle title and vehicle insurance bill for **JIMENEZ**'s white BMW, both in his name; a Massachusetts Cannabis Control Commission Registration bearing **JIMENEZ**'s photo, name and address; and a prescription pill vial with **JIMENEZ**'s name.

21. During the execution of the warrant, **JIMENEZ**'s brother, Roldaniel Jimenez, arrived in and exited from his vehicle. Roldaniel Jimenez possesses an active Massachusetts Firearms Identification card. Roldaniel Jimenez informed agents that there were no firearms in the **SUBJECT PREMISES** that belonged to him. However, Roldaniel Jimenez, who was visibly agitated, told agents that he did have a firearm in his vehicle and volunteered to get it. Agents declined.

22. At approximately 10:20 a.m. on June 14, 2019, Massachusetts State Trooper Douglas Dolan, who is assigned to the Violent Fugitive Apprehension Section ("VFAS"), spoke to **JIMENEZ**'s supervisor at **JIMENEZ**'s place of employment in Woburn, MA. According to **JIMENEZ**'s supervisor, during the afternoon of June 13, 2019, **JIMENEZ** told him that **JIMENEZ** needed to leave work that day for a family emergency. **JIMENEZ**'s supervisor further told Trooper Dolan that **JIMENEZ** failed to show up for work the next day (June 14, 2019), which was not characteristic of his past employment. Further efforts to locate **JIMENEZ** have thus far proven unsuccessful.

23. The precise location information requested by the proposed warrant will enable investigating agents to locate **JIMENEZ** in possession of the Target Mobile Phone, among other investigative avenues.

**The Relevant Technology**

24. I know that mobile phone providers have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the mobile phones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the mobile

phone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the mobile telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise than E-911 Phase II data.

### Authorization Request

25. I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Fed. R. Crim. P. 41.[1]

26. I also request that the Court direct T-Mobile to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-Mobile services, including by initiating a signal to determine the location of the Target Mobile Phone on T-Mobile's network, and at such intervals and times as directed by the government. The government will compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

27. I further request that, pursuant to the preclusion of notice provisions of 18 U.S.C. §§ 2703(b)(1)(A) & 2705(b), the Court order T-Mobile not to notify any person (including the

---

[1] 18 U.S.C. 2703(c) authorizes a "court of competent jurisdiction" to issue a search warrant for the kinds of records that this application seeks. A "court of competent jurisdiction" includes a district court ("including a magistrate judge") that has jurisdiction over the offense being investigated. 18 U.S.C. § 2711(3)(A)(i).

10

subscriber or customer to whom the materials relate) of the existence of this application, the warrant, or the execution of the warrant, for the earlier of one year from the date of the Court's Order or upon notice by the government within 30 days of the conclusion of its investigation, unless the Court extends such period under 18 U.S.C. § 2705(b)  T-Mobile may disclose this Order to an attorney for T-Mobile for the purpose of receiving legal advice.  Non-disclosure is appropriate in this case because the Court's Order relates to an ongoing criminal investigation that is not known to the public and, to the extent **JIMENEZ** is aware of the investigation, alerting **JIMENEZ** to agents efforts to identify his location by means of obtaining his geographic location via the Target Mobile Phone may result in **JIMENEZ** discarding the Target Mobile Phone and taking further steps to avoid detection and apprehension.  There is accordingly reason to believe that notification of the existence of the Order will seriously jeopardize the investigation, including by giving **JIMENEZ** an opportunity to continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, intimidate potential witnesses, or endanger the life or physical safety of an individual.  *See* 18 U.S.C. § 2705(b).

28.　I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay any required notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of the Target Mobile Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give **JIMENEZ** an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution.  *See* 18 U.S.C. § 3103a(b)(1).  As further specified in Attachment B, which is incorporated into the warrant, the

proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

29. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Mobile Phone outside of daytime hours.

30. I further request that the Court order that all papers in support of the applications for the search warrant and Criminal Complaint, including the affidavit, the search warrant, the Criminal Complaint, and any related paperwork, be sealed until further order of the Court, except that the government may produce them in criminal discovery and provide the search warrant to T-Mobile. These documents discuss an ongoing criminal investigation that is not public nor does **JIMENEZ** know the details of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize the investigation.

## CONCLUSION

31. Based on the information set forth above, there is probable cause to believe that **JIMENEZ**, having previously been convicted of a felony, possessed one or more firearms on or about June 13, 2019, and that the location information described in Attachment B will assist law enforcement in arresting **JIMENEZ**. I therefore request that this Court issue a Criminal Complaint charging **JIMENEZ** with a violation of 18 U.S.C. § 922(g)(1) and that the Court further issue a warrant authorizing investigators to search for information about the location of

the Target Mobile Phone under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A).

_____
Matthew J. McCarthy
Special Agent
Homeland Security Investigations

Sworn and subscribed before me this 14th day of June, 2019.

_____
JENNIFER C. BOAL
United States Magistrate Judge

13

# EXHIBIT 1